UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

CANDICE J. NARVAEZ,

        Plaintiff,

v.                                             CAUSE NO. 1:20-CV-120 DRL-MGG

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## OPINION & ORDER

Candice Joann Narvaez appeals from the Social Security Commissioner's final judgment denying disability benefits and requests remand for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Ms. Narvaez's request and remands the Commissioner's decision for further consideration consistent with this opinion.

## BACKGROUND

Ms. Narvaez applied for Title II disability insurance benefits on June 22, 2017. In her application, she alleged a disability onset date of February 16, 2017. Ms. Narvaez's application was denied initially on October 19, 2017, and on reconsideration on November 28, 2017. Following a hearing on December 13, 2018, the Administrative Law Judge (ALJ) issued a decision on February 1, 2019, which affirmed the Social Security Administration's denial of benefits.

The ALJ found that Ms. Narvaez suffers from severe impairments: rheumatoid arthritis and immunodeficiency disorder. The ALJ found that Ms. Narvaez suffers from certain non-severe impairments: irritable bowel syndrome, anxiety, and depression. The ALJ held that none of Ms. Narvaez's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App'x 1. The ALJ said Ms. Narvaez has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R.

§ 404.1567(b) with certain limitations. She worked before as a packer and floor leader. With her RFC, the ALJ found that Ms. Narvaez couldn't perform her past work; but, based on the vocational expert's testimony, she could work as a checker, routing clerk, and mail sorter. Based on these findings, the ALJ denied Ms. Narvaez's claim for disability insurance.

## STANDARD

The court has authority to review the appeals council's decision under 42 U.S.C. § 405(g), though review is bound by a strict standard. Because the council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

The deference for the ALJ's decision is lessened when the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas*, 732 F.3d at 709. Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision lacks sufficient evidentiary support and requires remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp.3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow

the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

## DISCUSSION

Ms. Narvaez argues that the ALJ improperly evaluated her subjective symptoms, and that the vocational findings lacked substantial evidence.

To qualify for disability benefits, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims under the Act includes determinations as to (1) whether the claimant is doing substantial gainful activity (SGA); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

3

Once an ALJ decides that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which she is limited in performing work-related activities. 20 C.F.R. § 404.1529(b)-(c). In doing so, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, her daily activities, medications, and other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(2)-(3). In determining the extent to which the claimant's symptoms affect her capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

The ALJ's findings as to the claimant's allegations of subjective symptoms and credibility are treated deferentially and will only be overturned if "patently wrong" or "lack[ing] explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.*

The ALJ found that Ms. Narvaez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" [R. 22]. The ALJ relied on physical examinations showing normal bowel sounds with no distention, as well as single medical notes showing intact fine manipulative abilities and mild arthralgias [R. 22]. The ALJ also noted that while she had some problems attending to her personal care, she remained independent in completing personal care tasks [R. 22]. The ALJ also found Ms. Narvaez was capable of preparing simple meals, performing light household chores, driving, shopping online, and managing money [R. 22]. The ALJ also relied on Ms. Narvaez's ability to work part-time as a teacher's aide [R. 22]. Although Ms. Narvaez reported

4

worsening conditions initially, the ALJ found that she later reported there was no further substantial change [R. 22].

In the last paragraph of the RFC discussion, the ALJ provides what seems a vague discussion of Ms. Narvaez's impairments and symptoms in general, without any analysis or explanation of how the medical record contradicts her subjective symptoms. The ALJ notes that, though Ms. Narvaez suffers from severe impairments, she "retains the capacity to perform activities of daily living and perform many work-related activities" [R. 23].

Ms. Narvaez argues that the ALJ impermissibly relied on her activities of daily living in finding that her subjective symptoms weren't supported by the record. The ALJ relied on Ms. Narvaez's ability to "prepare simple meals, perform light household chores, drive a car, shop in stores, and manage money independently" [R. 19]. The ALJ relied on these activities of daily living multiple times throughout the decision, as well as noted she was capable of watching television [R. 19-20, 23].

The law warns against improperly conflating activities of daily living with the ability to perform activities associated with full-time work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). An ALJ must consider a claimant's daily activities when assessing subjective symptom allegations according to 20 C.F.R. § 404.1529(c)(3)(i) so long as he doesn't place "undue weight" on a claimant's household activities in assessing the claimant's ability to perform a job outside the home. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). When the ALJ examines a claimant's daily activities and how they affect the subjective symptom analysis, the "mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment." *Nelson v. Colvin*, 2016 U.S. Dist. LEXIS 9739, 17 (N.D. Ill. Jan. 27, 2016).

At step two, the ALJ did not improperly rely on daily activities and instead used activities of daily living as one factor among many in finding Ms. Narvaez's mental impairments to be non-severe [R. 20-21]. However, in analyzing Ms. Narvaez's physical impairments and subjective symptoms in the

5

RFC analysis, the ALJ erred in relying on Ms. Narvaez's daily activities by ignoring the difficulties she experiences when performing these basic activities. *Craft*, 539 F.3d at 680 (finding error when the "ALJ ignored [the claimant's] qualifications as to how [s]he carried out" daily activities). For instance, although the ALJ found that Ms. Narvaez was capable of performing light chores, she testified at the hearing that she cannot do any cleaning at all, as she can only stand for ten to fifteen minutes [R. 44]. She testified that her husband does all of the cleaning, as she cannot do any typical household chores [R. 44]. Moreover, she testified at the hearing that she cannot do any cooking [R. 44]. She testified that even on a good day, if she does chores or cooking, she will "be paying for it the next day, and [she] will be very sore, and in a lot of pain" [R. 44].

In Ms. Narvaez's function report, dated over a year before the hearing, Ms. Narvaez noted that she cannot walk her daughter to or from school, which is across the street from her home, and that her sister brings her daughter home [R. 200]. She stated that her husband does the household chores and prepares some meals, and that her sister helps with her daughter and drives her as needed. [R. 201]. Ms. Narvaez stated that she could do "light cleaning," but clarified that she could only wipe down counters and tables, and that she only did so once a week [R. 202]. She stated that she can shower, but she requires a shower chair [R. 201]. She further stated that struggled to get up from the toilet by herself, and she required a small chair to help her get up. [R. 201]. She said she can feed herself, but most of her meals are prepared for her [R. 201]. Ms. Narvaez said she can prepare small sandwiches or lunchables rarely, and that she only does so "about once a week" [R. 202]. Her husband sets out her medication for her to take [R. 202]. Though Ms. Narvaez said she is capable of driving, she avoids doing so out of fear of her IBS flaring up [R. 203].

The ALJ's findings that Ms. Narvaez was capable of preparing simple meals, performing light household chores, driving a car, and remaining independent in personal care don't accurately depict her limitations and struggles in completing those tasks; nor does the decision wrestle with why these

6

conclusions make sense in light of this conflicting evidence. The ALJ didn't properly articulate the manner in which Ms. Narvaez completed ADLs such as driving a car and remaining independent in personal care, and the ALJ mischaracterized Ms. Narvaez's ability to perform household chores and prepare simple meals.

The ALJ notes that Ms. Narvaez testified that she continued to work part-time as a teacher's aide in finding that she was not as limited as she alleged. This statement is problematic for two reasons. First, a claimant's attempts to maintain part-time work despite pain does not preclude her from establishing disability. *Roddy*, 705 F.3d at 637 (citing *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003)). More problematic, the ALJ did not consider the impact of her part-time work on her alleged impairments. Ms. Narvaez testified that she tried to work as a substitute teacher, but she was unable to lead a classroom by herself due to her impairments, so now she is a substitute aide who works one-on-one with a student [R. 62]. She testified that working one-on-one with a student allows her to leave early when necessary [R. 62]. She said she only works for two hours a day, two days a week [R. 61]. She further testified that on bad weeks, she only works one day [R. 61]. The ALJ never considered how limited Ms. Narvaez's part-time work is, or explained how continued part-time work of this nature contradicted her alleged symptoms.

Ms. Narvaez further asserts that the ALJ incorrectly found that her symptoms were less limiting than alleged due to treatment improving symptoms [R. 24]. Though the medical record indicates that treatment has helped with some of her symptoms, the medical record does not indicate that the treatments alleviated her symptoms such that she could work full-time. To the contrary, the medical record indicates that Ms. Narvaez required monthly infusions because her medications didn't control her symptoms [R. 621]. Despite monthly infusions, Ms. Narvaez still regularly presented with moderate arthralgias of the knees, feet, and toes; mild arthralgias of the fingers, hands, wrists, and spine; lower extremity effusion; and hammertoes [R. 301, 313, 317, 466, 468, 480, 579, 580, 621]. The

ALJ did not support the assertion that Ms. Narvaez's improvement with treatment contradicted her complaints of joint pain with evidence in the medical record.

Moreover, the ALJ did not consider how Ms. Narvaez's rheumatoid arthritis affected her wound healing—a chronic issue plaguing Ms. Narvaez. There has been some indication that certain medications for rheumatoid arthritis contributes to delayed wound healing.[1] Rheumatoid arthritis and treatment for rheumatoid arthritis cause immunosuppression, which can lead to poor wound healing.[2] The ALJ is required to discuss side effects of treatment and medication if it is relevant, and the ALJ did not consider the side effects of Ms. Narvaez's rheumatoid arthritis treatment. SSR 16-3p, 2016 SSR LEXIS 4, 16; 20 C.F.R. § 404.1529(c)(3). Ms. Narvaez suffered from multiple open sores up to a year after a surgery, and she was recommended to wound care [R. 414, 517, 518, 544]. Such issues with wound healing have impacted what types of clothes Ms. Narvaez can wear due to the placement of her wounds and ulcerations [R. 411, 446, 517-18, 544]. Though not accounting for Ms. Narvaez's medication side effects may seem minor, when taken into consideration with the ALJ's other errors in analyzing Ms. Narvaez's subjective symptoms, remand is the appropriate action.

Ms. Narvaez asserts that the ALJ erred in finding her gastrointestinal symptoms to be less than alleged due to a finding of normal bowel sounds. There is no indication in the medical record that normal bowel sound and no distention contradicts Ms. Narvaez's complaints of gastrointestinal pain, diarrhea, nausea, and vomiting. No physician found that normal bowel sounds and a lack of distention meant that Ms. Narvaez was not suffering as much as she alleged. Though the ALJ found Ms. Narvaez's IBS to be a non-severe impairment, the ALJ must "consider limitations and restrictions

---

[1] Charles Bankhead, *RA Patients Pose Perioperative Challenges*, Medical News (2018), https://www.medpagetoday.com/meetingcoverage/cra/72728 (last visited Aug 31, 2021).

[2] Annie Vickers, *Delayed Wound Healing in Patients with Rheumatoid Arthritis,* Nursing Times (2004), https://www.nursingtimes.net/clinical-archive/public-health-clinical-archive/delayed-wound-healing-in-patients-with-rheumatoid-arthritis-06-04-2004/ (last visited Aug 31, 2021).

imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5, 14; *see also* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). The ALJ's full discussion of her IBS and gastrointestinal symptoms is two sentences long:

> The claimant's physical exams recently show her bowel sounds are normal, no distention, with tenderness in the right lower quadrant and left lower quadrant. A June 2017 CT of her abdomen revealed findings suggestive of acute cholecystitis, including an enlarged gall bladder, pericholecystic fluid, and probable wall thickening [R. 22].

This is the only portion of the RFC analysis where Ms. Narvaez's IBS and gastrointestinal symptoms are discussed.

In early June 2017, Ms. Narvaez began complaining of abdominal pain, nausea, vomiting, and fever [R. 404]. She said she had been suffering from episodic nausea and vomiting with abdominal cramping for a few months [R. 413]. Her physician believed it was biliary in nature [R. 404]. Shortly thereafter, Ms. Narvaez underwent a seven-day hospital stay and a cholecystectomy (gallbladder removal) for her gastrointestinal symptoms [R. 317]. Before the cholecystectomy, a CT scan indicated an abnormal gallbladder appearance with wall thickening and pericholecystic fluid, as well as an enlarged liver [R. 428]. Her physician indicated that this "mostly likely reflects a hypoproteinemic state" [R. 426]. At her follow up appointment after surgery, Ms. Narvaez continued to complain of indigestion and nausea, saying she would like to discuss further treatment [R. 560]. Ms. Narvaez began having diarrhea at this time, and she had to sleep sitting up due to her heartburn [R. 560]. Ms. Narvaez continued to suffer from a loss of appetite, fevers, abdominal pain, diarrhea, nausea, and vomiting later that month [R. 317]. In October 2018, Ms. Narvaez continued to complain of bad cramping followed by diarrhea occurring two to three times a week with fecal urgency [R. 559]. Ms. Narvaez indicated that having her gallbladder removed did not alter her episodes of diarrhea or cramping [R. 559]. Ms. Narvaez's gastroenterologist stated in October 2018 that she suffered from IBS, GERD,

9

and cholecystectomy, and that she suffered from chronic gastroesophagitis [R. 655]. Ms. Narvaez again complained of abdominal pain and cramping, with diarrhea occurring multiple times a day about three days a week [R. 655]. She stated that she had a hard time leaving the house, was nauseous daily without vomiting, and that diet changes did not work [R. 655].

At the hearing, Ms. Narvaez testified to having "episodes" at least two times a week with sharp pains and fecal urgency [R. 50]. She testified that these symptoms continue throughout the day, and she feels nauseous and often does not eat on those days [R. 50]. She testified that previous medication for her IBS has not worked [R. 51]. Ms. Narvaez stated that her diarrhea is severe and very painful and occurs multiple times a day [R. 51-52].

The ALJ didn't consider or analyze Ms. Narvaez's symptoms with regard to her IBS. Instead, the ALJ relied on normal bowel sounds and a lack of distention [R. 22]. However, there is no indication in the medical record that her physicians or gastroenterologist viewed these normal bowel sounds or lack of distention as contradicting her symptoms. To the contrary, her physicians continue to treat her for IBS, including medication changes and regular follow ups [R. 653]. The ALJ is required to analyze all impairments, including those found to be non-severe, in determining a claimant's RFC. SSR 96-8p, 1996 SSR LEXIS 5, 14; *see also* 20 C.F.R. § 404.1523. The ALJ's omission of Ms. Narvaez's continued gastrointestinal symptoms while relying on normal bowel sounds and a lack of distention amounts to impermissible cherry-picking of the record. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Should the ALJ find that Ms. Narvaez's IBS poses no further limitations in her RFC, he is required to build a logical bridge from the medical evidence to that conclusion. That didn't occur here. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Ms. Narvaez makes other arguments regarding her subjective symptoms and the testimony given by the vocational expert; but, because the court is remanding based on errors in analyzing her subjective symptoms, the court need not discuss these other arguments at this time. The ALJ will have

the opportunity to discuss and reevaluate the rest of Ms. Narvaez's allegations on remand. This is not to say that there are no other errors in the ALJ decision, but the court need not discuss them when errors are already present in the ALJ's analysis and discussion of her subjective symptoms.

## CONCLUSION

For these reasons, the ALJ erred in analyzing Ms. Narvaez's subjective symptoms. Accordingly, the court GRANTS Ms. Narvaez's motion for remand (ECF 1) and REMANDS the ALJ's decision denying Ms. Narvaez's application for disability insurance benefits consistent with this opinion.

SO ORDERED.

September 13, 2021   *s/ Damon R. Leichty*
                     Judge, United States District Court